PETERSON, Respondent, vs. STOUGHTON STATE BANK, Appellant.

*November 5 — November 25, 1890.*

78  113
86  574

*(1, 2) Promissory notes: Agreement to pay attorney's fees: Voluntary payment. (3) Action, tort or contract?*

1. A promissory note in which the maker agrees to pay the expense of collection, including reasonable attorney's fees, is not negotiable.

2. A bank owning several notes executed by the plaintiff, and holding others for collection, pressed him for payment or security, stating that the aggregate amount of his indebtedness thereon was $1,200. Relying upon such statement he executed to the bank his note for that sum, secured by mortgage; and the bank afterwards transferred such note to a *bona fide* purchaser. Without the knowledge or consent of the plaintiff the bank had included in said $1,200 the amount of a note upon which nothing was due or collectible. *Held*, that the plaintiff might recover from the bank the amount thus wrongly included.

3. In an action to recover said amount, the complaint stated the facts. The trial court declined to determine whether the action was for money had and received or for tort. *Held*, not error.

APPEAL from the Circuit Court for *Dane* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The complaint alleges, in effect, that a short time prior to June 23, 1888, the plaintiff was indebted to the defendant upon several promissory notes and other demands to the aggregate amount of $778.05, and that the defendant

also held other notes and demands against the plaintiff for collection, amounting in the aggregate to $669.75, making a total of $1,447.80; that a few days prior to June 23, 1888, the plaintiff caused to be paid to the defendant on said aggregate indebtedness the sum of $518.94, leaving a balance of $928.86; that on the day and year last mentioned the defendant falsely claimed and represented to the plaintiff that he was still indebted on the several notes and demands so owned by the defendant, and so held by it for collection, in a sum exceeding $1,200, with interest at the rate of ten per cent., and thereupon the defendant exacted security for said indebtedness, and that the plaintiff, without knowing the amount of such aggregate indebtedness, and relying upon such representations of the defendant, executed and delivered to the defendant a note and mortgage for $1,200, which was in excess of the claims so owned and held by the defendant, in the sum of $271.14; that the defendant thereupon, for value received, sold and transferred said note and mortgage of $1,200 to another party, and also sold and transferred a note upon which there was still due $148.06, and which note and said note and mortgage the plaintiff was liable to pay to the holder thereof; that the $148.06, so outstanding against the plaintiff on such note, and said $271.14, made $419.20, which the plaintiff, by virtue of the mortgage, paid the defendant in excess of the indebtedness so owned and so held for collection by the defendant. Judgment is demanded for that amount, with interest at ten per cent., from June 23, 1888, with costs.

The answer admitted the paying of said $518.94 as stated, and the giving and transfer of said note and mortgage of $1,200, and the transfer of a note with a balance due thereon of about $148, and claimed that, at the time of making said payment of $518.94, the plaintiff was indebted on notes and claims owned by the defendant, and also on notes and claims held by it for collection, in an amount aggregating about $1,900.

At the close of the trial, the jury returned a verdict in favor of the plaintiff and against the defendant for $460.20, and from the judgment entered thereon the defendant appeals.

For the appellant there was a brief by *Bashford, O' Connor & Polleys*, and oral argument by *R. M. Bashford*.

For the respondent there was a brief signed by *Luse & Wait*, and oral argument by *L. K. Luse*.

CASSODAY, J. It is conceded that, at the time of the execution of the $1,200 note and mortgage, the plaintiff did not know the aggregate amount of his indebtedness to the bank, nor the aggregate amount of notes and claims held by the bank for collection against him. The cashier testified, in effect, that the plaintiff at first requested a loan of $1,000 with which to pay up such indebtedness and all of such notes and claims; that he thereupon, in the presence of the plaintiff, ran over the notes and claims constituting such indebtedness, and also the notes and claims so held for collection, and then informed the plaintiff that $1,000 would not be enough to pay his debts, and that it would be necessary for him to have $1,200; that the plaintiff, relying upon such statement, thereupon executed that note and mortgage. There is no pretense that any of the notes and claims so owned and so held by the bank were at that time delivered to the plaintiff, nor that he was at that time informed of the precise aggregate amount of them.

The cashier concedes, in effect, that the indebtedness so paid by the giving of that note and mortgage included a note executed by the plaintiff September 2, 1886, wherein and whereby the plaintiff, for value received, promised to pay, on or before January 2, 1887, to Christ. Thompson, or order, $355, with interest from date until paid at the rate of ten per cent. payable annually, and containing an agreement to pay the expenses of collecting the same, in-

cluding reasonable attorney's fees; and which note was secured by chattel mortgage on twenty-seven acres of tobacco. It appears from the undisputed evidence that that note was so given by the plaintiff to Thompson without any consideration whatever except to indemnify him against loss by reason of his signing three several notes with the plaintiff, aggregating the same amount; that Christ. Thompson never suffered any such loss, and that the plaintiff never became liable to him for anything upon the note; that January 17, 1887, Christ. Thompson settled a suit against himself and one Nels Thompson on a note of $113.75 in favor of Burnham, by paying Mr. Towne, of Edgerton, $100 in cash, and leaving this Christ. Thompson note with him as security for the balance; that January 18, 1887, Mr. Towne sent the Burnham note and the Christ. Thompson note to the defendant in a letter with directions to deliver both notes to Christ. Thompson, upon his paying $23.50 to be remitted to Mr. Towne less charges; that the defendant never had anything to do with nor knew of the Christ. Thompson note until so received from Mr. Towne; that February 19, 1887, the defendant received a postal card from Mr. Towne to the effect that, if the Burnham note was not paid by Nels and Christ. Thompson by the following Wednesday, then to return both notes to him; that Christ. Thompson did not pay the bank the $23.50, and the notes were not delivered up to him nor returned to Mr. Towne, but were both retained by the defendant until on or about February 26, 1887, when the defendant's cashier asked Christ. Thompson for the $23.50 for Mr. Towne; that Thompson thereupon requested the defendant to pay the same for him, which the cashier finally consented to do and did do, upon Christ. Thompson's agreeing to allow the $355 note to remain with the bank as collateral security for the amount of his indebtedness to it; that the bank retained both notes so sent to it by Mr. Towne, until long after June 23, 1888; that on the

day and year last mentioned the $355 note and interest amounted to $419.20, being just the amount the plaintiff claims as the excess included in the $1,200 note and mortgage; and to recover back such excess this action is brought. The defendant claims it was properly included.

The court instructed the jury to the effect that the only material difference between the parties was as to whether that note should or should not have been included; that from the testimony it clearly appeared that the plaintiff did not owe anything upon the note, and that the same did not constitute any indebtedness against the plaintiff; that the note did not come into the possession of the defendant until after it became due, and hence the bank acquired no more right to collect the same than the payee; that the clause of the note whereby the maker agreed to pay the expense of collection, including reasonable attorney's fees, rendered it non-negotiable, and hence no more enforceable by the defendant than the payee. These several statements in the charge are each excepted to, but they are clearly supported by the undisputed evidence and the law applicable. That the clause in the note agreeing to pay attorney's fees rendered it non-negotiable was expressly held in *First Nat. Bank v. Larsen*, 60 Wis. 206; *Continental Nat. Bank v. McGeoch*, 73 Wis. 332.

At the request of the defendant, the court charged the jury, respecting the same note, to the effect that presumptively it was given for a valuable consideration, and that the defendant paid the full value thereof, and that it was intended to be paid by the note and mortgage given June 23, 1888. In view of the undisputed evidence, it may be doubtful whether the jury should have been authorized to indulge in any such presumption. At the request of the defendant, the court also charged the jury to the effect that if they found that the $355 note was given without consideration, and that the same was, with the knowledge of the plaintiff, embraced in the indebtedness which was to be

paid out of the money raised by the $1,200 note and mort-
gage, then the payment by the plaintiff of this note was
voluntary on his part, and he cannot recover in this action.
This instruction is to the effect that, although the defendant
could not have enforced the collection of that note against
the plaintiff, for the reason that he was not liable thereon,
yet, if the plaintiff, with full knowledge of the facts, volun-
tarily paid it in the manner indicated, then he was thereby
estopped from recovering the amount back in this action.
The court also charged the jury to the effect that if that
note was included in such indebtedness without the knowl-
edge or consent of the plaintiff, then he could recover. The
verdict in favor of the plaintiff conclusively determined
that it was so included without the knowledge or consent
of the plaintiff; and the evidence is certainly sufficient to
support the verdict. The only issuable fact was the one
thus indicated, and it was fully and fairly presented to the
jury in the charge of the court. The verdict thereon con-
clusively resolved all disputed facts in favor of the plaintiff,
and bars the only possible defense open to the bank.

There are no available exceptions to any portion of the
charge. Exceptions are taken to the refusal of the court to
give fourteen several instructions, each elaborately drawn
with reference to some phase of the case or the testimony.
It would serve no purpose to go over all these instruc-
tions in detail. Several of them are mere statements of
different phases of the case, and are sufficiently covered by
the general charge. Some of them are inapplicable. Some
of them would have been misleading if given. Some of
them are upon mere abstract propositions of law, and some
in relation to the mere weight of evidence.

Among the instructions rejected is one to the effect that
the action was for money had and received, in the sum of
$419.20, with interest from June 23, 1888. The general
charge, in effect, so treated the case throughout. At the
beginning of the trial, the defendant's counsel asked the

Peterson vs. Stoughton State Bank.

court for an interpretation of the complaint as to whether it was an action for money had and received, or for tort, but the court at that time declined to express such opinion. By reason of such ruling, the counsel for the defendant thereupon objected to any evidence under the complaint, which was overruled. Soon after the learned presiding judge stated, in effect, that he supposed it was an action on contract; that, although he did not so rule, he thought it was an action for money received or security taken. At common law it was quite important that the pleadings should reveal the particular class to which the action was supposed to belong. But in this state the forms of civil actions are abolished, and the pleadings in such actions in courts of record, and the rules by which the sufficiency of the pleadings are determined, are those prescribed by statute. Secs. 2600, 2644, R. S. The statute specifically prescribes what the complaint should contain — including a plain and concise statement of the facts constituting the cause of action. Sec. 2646, R. S. The allegations of the complaint in the case at bar comply with that section, and the proofs support the allegations. Had the complaint been indefinite and uncertain, or contained repugnant allegations, the defendant would have had his remedy. We perceive no error in the ruling of the court mentioned.

Exception is taken because the plaintiff's wife was allowed to testify as a witness. But we think she acted as agent in the matters to which she testified, and that she was therefore competent. Besides, such testimony was so remote from the only issue submitted to the jury that it probably had no effect in the determination of the verdict. There was certainly no error in allowing the plaintiff to show the complete history of the Christ. Thompson note under which the defendant claimed.

*By the Court.*— The judgment of the circuit court is affirmed.