Milwaukee County, Appellant, vs. Badger Chair & Furniture Company and another, Respondents.

*October 15—November 10, 1936.*

For the appellant there were briefs by *William A. Zabel,* district attorney of Milwaukee county, *Oliver L. O'Boyle,* corporation counsel, and *Clark J. A. Hazelwood,* assistant corporation counsel, and oral argument by *Mr. Hazelwood.*

For the respondent Badger Chair & Furniture Company there was a brief by *August C. Moeller* and *Emmet Horan, Jr.,* attorneys, and *Benjamin Poss* and *Joseph P. Brazy* of counsel, all of Milwaukee, and oral argument by *Mr. Poss, Mr. Brazy,* and *Mr. Horan.*

For the respondent Massachusetts Bonding & Insurance Company there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *Bernard V. Brady.*

NELSON, J. The complaint, so far as here material, may be summarized as follows:

On June 12, 1926, the plaintiff and the defendant Furniture Company, hereafter called the defendant, entered into a written contract covering a three-year period from January 1, 1926, to December 31, 1928, a copy of which contract is annexed to the complaint and made a part thereof; that on June 12, 1926, the defendants made, executed, and delivered to the plaintiff a bond in the penal sum of $50,000, and conditioned that the defendant would faithfully perform its contract, a copy of which bond is annexed to the complaint and made a part thereof; that, according to the terms and conditions of said contract and particularly paragraph (9) thereof, the plaintiff agreed, in manufacturing the chairs and other articles of furniture, pursuant to the terms of said contract, to furnish and supply the labor and lumber therefor, and the defendant agreed to furnish and supply all other materials used in the manufacture thereof; that thereafter the defendant entered upon the performance of said contract and continued therewith during the period covered by the same; that, although the defendant received all of the benefits and consideration due it from the plaintiff, it failed and neglected faithfully to perform its contract in the following respects: The defendant failed to provide and furnish certain materials agreed to be furnished by it,—the kind, quantity, and reasonable value of which are shown in Exhibit "C" attached to the complaint and made a part thereof; that, although said materials should have been furnished by the defendant, the defendant caused them to be paid for out of the moneys due to and belonging to Milwaukee county; that knowledge of the foregoing facts did not come to the attention of the plaintiff until April 2, 1935, and that due demand was thereafter made upon both defendants for the payment of the amount asserted to be due.

The contract contains the following recitations:

"Whereas, the county of Milwaukee has within its jurisdiction a house of correction, in which prisoners are confined under sentences of the courts of said county for various lengths of terms, and such sentences require said prisoners to be employed at hard labor, and said county has inaugurated a system of *manufacture of chairs* for the purposes of affording work to such prisoners, and desires to derive therefrom a revenue to compensate said county for the expense of maintaining said house of correction and keep of said prisoners, and

"Whereas, the said county desires to dispose of its output of chairs at the best possible advantage, and the party of the second part has heretofore contracted with said county for such output and *is familiar with all the facts and circumstances attending the production of such chairs* at said house of correction, and

"Whereas, certain *stock lines of chairs are made at* said house of correction which are known to both parties to the following contract, but the party of the second part, from past experience, knows that it will require from time to time certain changes in the style and designs of chairs, in order to meet the exigencies of the trade, and it is necessary to meet such exigencies and demands of the trade, in order to make the output of the said house of correction readily saleable."

So many of the provisions of the contract, as need be recited and summarized, are as follows:

"(1) The party of the first part agrees to sell to the party of the second part, its entire output of chairs which shall be manufactured by the party of the first part at said house of correction, for a period of three years from January 1, 1926, to and including December 31, 1928. Said sales are to be made as to the known styles and designs of chairs at the prices and on the terms hereinafter specified and set forth in this contract, and as to all chairs that shall be made at the request of the party of the second part of a different design or pattern or material than those specified herein, the price shall be a reasonable and fair price, gauged as far as possible upon

the same basis relative to actual and necessary cost, as the prices herein established for the said stock chairs specified in this contract; which prices shall be fixed by the committee on house of correction of the county board and the inspector thereof. It is further agreed that if the price of lumber to be used in the manufacture of chairs shall increase materially from the present price of material, then first party shall have the right to increase the prices herein scheduled accordingly and proportionally."

Paragraph (2) provided for the contingency of a stagnant chair market and the manufacture by the plaintiff of such other articles of furniture as might be manufactured by the plaintiff with prison labor, and for the method of determining the price to be paid therefor.

In paragraph (3), the defendant agreed to purchase, accept, and pay for the plaintiff's entire output of chairs and other furniture on certain terms.

Paragraph (4) contained an enumeration of certain stock lines and styles of chairs and the agreed price per dozen to be paid therefor.

Paragraph (5) related to the terms of payment.

Paragraph (6) provided that the chairs should be made in as good and workmanlike a manner as was consistent with prison labor; that the plaintiff at least once a month would notify the defendant as to the chairs that were ready for delivery; and that the defendant would accept delivery within twenty days. The plaintiff further agreed "to deliver the chairs as ordered by the party of the second part to any dealer, warehouse or transportation company within the city of Milwaukee, and to make such deliveries promptly when so ordered."

Paragraph (7) granted to the defendant access to the house of correction during working hours for the purpose of inspecting the work.

Paragraph (8) provided:

"Second party further covenants and agrees to purchase, pay for and keep on hand and stored with first party *raw material, such as leather, cane, tow, springs, etc.,* for the manufacture of said chairs and furniture to an amount and value of not less than two thousand dollars, and keep such stock replenished to such value from time to time. And said second party shall procure and keep in force insurance on such raw material, for the benefit of itself and said first party, in an amount of not less than two thousand dollars, which policies of insurance shall be made payable to the parties hereto as their interests may appear. Said first party agrees to use reasonable care in and about protecting said raw material so to be given into its possession, but it shall in no way be responsible to second party for any losses or deterioration thereof."

Paragraph (9) provided:

"It is further understood and agreed between the parties hereto, that in the manufacture of said chairs and other articles of furniture, first party is *to furnish and supply the labor and lumber* therefor, and the second party is *to furnish the leather, cane, tow, springs and other material and articles* used in the manufacture thereof."

Paragraph (10) gave to the plaintiff a first lien upon all raw material that might be turned over to or stored with the plaintiff to secure the faithful performance of the contract, and further required the furnishing of a sufficient bond to secure the payment of the indebtedness and liability of the defendant.

The bond attached to the complaint is conditioned as required by the contract.

The articles listed in Exhibit "C" are varnish, benzine, stains, glue, sandpaper, packing, and chair hardware.

The answers admit certain allegations of the complaint, deny others, and allege, among other things, that the chairs

which the plaintiff agreed to manufacture were to be finished chairs, and that the varnish, benzine, etc., listed in Exhibit "C" are all materials required in the manufacture of finished chairs; that the agreement of the plaintiff to deliver the chairs as ordered to any dealer, warehouse, or transportation company within the city of Milwaukee, in the absence of an agreement to the contrary, required the plaintiff to furnish packing for the same. The answers then recite certain surrounding circumstances which existed at the time the contract was entered into, the proceedings of the county board in advertising for bids, accepting the bid of the defendant, etc., which preceded the execution of the written contract, the practical construction which was given to the contract by the parties, and asserted that the true meaning of the contract required the plaintiff in manufacturing chairs and furniture for the defendant to furnish the things and articles mentioned in Exhibit "C." The answers further allege that the plaintiff rendered monthly accounts to the defendant which were all duly paid, except an amount subsequently found to be due the plaintiff as a result of an audit, which amount the defendant thereafter paid. The answers further allege that the cause of action alleged in the complaint did not accrue within six years before the commencement of the action. The answers further set up the defenses of waiver and estoppel. The defendants further answered by way of counterclaim against the plaintiff and prayed that, in the event it should be determined that their several defenses were not available to them, without a reformation of the contract, the contract be reformed.

In view of the disposition which is to be made of this controversy, we have not recited in detail the surrounding circumstances pleaded nor the asserted facts relating to the practical construction put upon the contract by the parties since, upon the trial of the action, the court will be called upon to

pass upon the admissibility of the evidence as and when it is offered for the purpose of explaining the terms of the contract.

The plaintiff contends that the terms of the contract are clear and unambiguous, and that the defendant was thereby obligated to furnish all varnish, benzine, stain, glue, sand-paper, packing, and chair hardware required in manufacturing the chairs and furniture covered by the contract, and that therefore parol evidence is inadmissible to explain the terms of the contract. The defendant, on the other hand, contends that paragraph (9) of the contract, when considered in connection with other provisions of the contract, is ambiguous; that it was never intended to obligate the defendant to furnish to the plaintiff the supplies for which the plaintiff seeks to recover, and that therefore parol evidence as to the surrounding circumstances, the proceedings and events leading up to the making of the contract, the practical construction put upon it by the parties, and the documents and declarations constituting the negotiations leading up to the making of the contract, are admissible for the purpose of explaining, not varying or contradicting, the terms of the contract. The trial court held that the contract was ambiguous.

The first question to be determined is whether the contract is ambiguous, in that it may reasonably be taken in more than one sense. If it is, then evidence of the surrounding circumstances, the proceedings and declarations constituting the negotiations leading up to the making of the contract, and the practical construction given to it by the parties, may be resorted to in aid of construction and for the purpose of explaining its terms. *Firestone Tire & Rubber Co. v. Werner,* 204 Wis. 306, 236 N. W. 118; *Wheelwright v. Pure Milk Association,* 208 Wis. 40, 240 N. W. 769, 242 N. W. 486; *Darling & Co. v. Frank Carter Co.* 208 Wis. 222, 242 N. W. 519.

If the contract is clear and unambiguous, such evidence must be excluded. *John O'Brien Lumber Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Schuhknecht v. Robers,* 192 Wis. 275, 212 N. W. 657, and cases cited therein.

In our view, the trial court was right in holding that the contract was susceptible of two meanings or senses, and was therefore ambiguous. While the contract provides that the plaintiff will furnish "the labor and lumber" in the manufacture of chairs, and that the defendant will furnish "the leather, cane, tow, springs and other material and articles used in the manufacture thereof," it is silent as to who should furnish the varnish, benzine, stain, etc., important supplies obviously entering into the manufacture of chairs and furniture. The contract provides that the defendant will purchase, pay for, and keep on hand, and stored with the plaintiff "raw material, such as leather, cane, tow, springs, etc., for the manufacture of said chairs and furniture to an amount and value of not less than $2,000, and keep such stock replenished to such value from time to time." This language under the doctrine of *ejusdem generis,* 13 C. J. p. 537, 25 R. C. L. p. 996, is certainly susceptible of the construction that the raw material to be furnished, paid for, and kept on hand, was leather, cane, tow, springs, and other like materials. In paragraph (9), the defendant agreed to furnish "leather, cane, tow, springs and other material and articles used in the manufacture" of chairs and articles of furniture. That language, being almost identical with the language contained in paragraph (8), is likewise susceptible of the construction which reasonably may be given to the similar language contained in paragraph (8). The abbreviation "etc.," contained in paragraph (8), is to all intents and purposes the equivalent of the words "and other material and articles" contained in paragraph (9). The plaintiff agreed to furnish labor and lumber. It did not agree to furnish *only* the labor and lumber. The defendant did not agree to furnish all materials and *all* supplies except

lumber used in manufacturing furniture or to furnish *all* material and articles except lumber, in addition to the leather, cane, etc., specified. The contract recites that the defendant has heretofore contracted with said county for such output and *is familiar with all the facts and circumstances attending the production of such chairs at said house of correction.* The contract obviously was entered into with respect to the facts and circumstances attending the production of the chairs by the plaintiff at its house of correction and the defendant's knowledge thereof. In this situation, it would seem nothing less than a travesty on justice to hold that the contract is clear and unambiguous and therefore not subject to explanation by parol.

The plaintiff stresses the contention that the county of Milwaukee is a sovereign subdivision of the state of Wisconsin, and for that reason its contract is not subject to the same rules that are applicable to private contracts. In our opinion the contention is without merit. *McDonald v. State,* 203 Wis. 649, 235 N. W. 1. In entering into the contract for the manufacture of chairs, the county obviously was acting in a proprietary capacity, although in manufacturing furniture in the house of correction it was performing a governmental function and acting in a governmental capacity. No good reason is perceived why such a contract should not be governed by the same rules that are applicable to private contracts.

The plaintiff further contends that the defenses of payment and settlement, waiver and estoppel, are not available to the defendants because the county as a sovereign is not bound by the acts of its officials in accepting a lesser amount than was due it. Certain cases are cited to the proposition that a sovereign is not bound by the unauthorized or inadvertent act of its officer, in paying out an excessive sum or in accepting a lesser sum than is actually due. This may be good law in certain situations, but it should not be applied to

a situation like this, where the county, with the knowledge and approval of its officers in charge of the house of correction and those constituting its county boards, has during a course of years, expressly or impliedly, approved of settlements under its contract entered into by the county in its proprietary capacity. It is the law of this state that a municipality may, under certain circumstances, be subject to the defense of estoppel. *Eau Claire Dells Imp. Co. v. Eau Claire,* 172 Wis. 240, 179 N. W. 2; *L. G. Arnold, Inc., v. Hudson,* 215 Wis. 5, 254 N. W. 108, and cases cited therein.

In our view, all of the demurrers to the several defenses, with the possible exception of that pleading the six-year statute of limitations, were properly overruled. As to the defense that the plaintiff's claim did not accrue within six years before the commencement of the action, it is not clear that the court erred in overruling the demurrer. If the action is on the bond, which is under seal, the twenty-year statute of limitations is applicable. Sec. 330.16 (2); *Jacobs v. Spalding,* 71 Wis. 177, 36 N. W. 608; *Mariner v. Wiens,* 137 Wis. 637, 119 N. W. 340; *Chas. A. Krause M. Co. v. Chris. Schroeder & Son Co.* 219 Wis. 639, 263 N. W. 193. If, however, recovery is predicated in part on the theory of unjust enrichment, then the six-year statute may be applicable.

The plaintiff's demurrer to the counterclaim of the defendant which asked for the reformation of the contract was properly overruled. If the contract as written does not mean what the plaintiff contends it means, there can be no recovery. If it means what the plaintiff contends that it means, then the defendants have the right to show that it is not a correct integration of the contract which the parties understood, agreed, and intended to enter into.

*By the Court.*—Order affirmed.